[Civ. No. 1781. Fourth Appellate District.—May 11, 1936.]

W. J. WALLACE AND COMPANY (a Corporation), Respondent, v. GROWERS SECURITY BANK (a State Banking Corporation) et al., Appellants.

Sullivan, Roche, Johnson & Barry for Appellants.

Melville G. Brittan, David R. Faries and McIntyre Faries for Respondent.

MARKS, J.—This is an appeal from an order denying defendants' motion to vacate their defaults and a judgment

rendered against them. The motion was made under the provisions of section 473 of the Code of Civil Procedure.

They thus briefly set forth in their opening brief many of the material facts of the case: "On March 15, 1933, the Superintendent of Banks, acting under the then recent addition, section 135c, to the Bank Act (Deering's General Laws, Supp. 1933, Act. 652), appointed a conservator for Growers Security Bank. Such conservator thereupon took possession of the property and assets of such bank as provided in the statute. Subsequently appellant succeeded the original appointee and at the time the complaint in this action was filed appellant was in charge of the affairs of the bank as the conservator thereof.

"Plaintiff filed its complaint on June 29, 1934. On the same day service of the summons and complaint was made upon appellant and upon E. A. Roberts as cashier of the banking corporation. On July 11, 1934, the twelfth day after such service, the defaults of appellant and of the said bank were entered and thereafter the default judgment from which relief is sought was rendered.

"On September 12, 1934, appellant served and on September 14, 1934, filed the notice of motion for an order vacating the said defaults and judgment. With the notice were affidavits reciting the facts relied upon on the motion and a proposed answer. Counter-affidavits were served and filed the day the motion came on for hearing and, before the matter was submitted and by leave of the court, a supplemental affidavit on behalf of the moving party was served and filed. On October 15, 1934, the lower court by its order denied appellant's motion and from such order this appeal is prosecuted."

We call attention to additional facts which we believe pertinent: Judgment was rendered on August 9, 1934. The motion was heard on numerous affidavits for both parties. E. A. Roberts was cashier of the defendant bank and set forth in his affidavit that the summons and complaint were served on the bank by delivery of the copies to him on June 29, 1934; that as Dike, as conservator, was in charge of the bank and its assets he delivered the documents to him on that day and "took no further action in the matter". Dike averred that an attorney in Bakersfield was a director of the bank "and had taken care of its legal business"; that either

on June 30th, or July 2d, 1934, he consulted this attorney about the case and was informed he was disqualified and could not represent the defendants; that on Tuesday, July 2d, 1934 (evidently an incorrect date), he mailed the summons and complaint to the Los Angeles offices of his present attorneys; that he left his office in Delano on July 6th and did not return until July 11th, when he found an unopened letter from his attorneys requesting that he give them the date of service upon him; that he telephoned one of the attorneys for plaintiff in Bakersfield and was informed that the default of defendants had been entered on that day and he so advised his attorneys in Los Angeles. As a sole excuse for his neglect in the important matter of answering the complaint he gave the following reason: That ''prior to July 11th, 1934, I had had no experience with legal procedure and was uninformed concerning the time allowed a defendant in a civil action for an appearance following the service of summons and complaint.''

The following appears in the affidavit of the Bakersfield attorney for plaintiff: ''Affiant alleges that on July 11th, 1934, this affiant personally informed the said G. A. Dike that his default had been entered. That from the period elapsing from June 29th, 1934, to July 11th, 1934, this affiant nor none of the attorneys with whom this affiant is associated, had been asked nor had entered into any stipulation extending the time for answer. That on July 11th, 1934, affiant informed the said G. A. Dike that if it was his wish that said default be set aside, that undoubtedly Mr. McIntyre Faries, the chief counsel for the said plaintiff corporation, would consent to such an arrangement. Following this date, namely, July 11th, 1934, and on August 9th, 1934, approximately a month thereafter, there had been no action taken by either of the defendants to set aside said default, and on said last named date this affiant, with the collaboration of plaintiff's other attorneys, secured a decree quieting title to the property set forth in said complaint. That nevertheless, after securing said judgment no action was taken by said defendants for the purpose of setting aside said default.''

In the affidavit of another attorney for plaintiff the following appears: ''That on or about the 31st day of May, 1934, at and in the city of Delano, Kern county, California, affiant,

together with Walter J. Wallace and C. O. LaRue, did discuss the subject matter of said action with the said G. A. Dike in his office at the Growers Security Bank, and did state to the said G. A. Dike that Walter J. Wallace was the owner of the property therein mentioned and requested the return thereof. That the said G. A. Dike then and there stated that he would not return the same. He stated further that said property was received prior to his becoming the conservator, and that while he knew of no ground of defense, he felt that for his own protection a decree should be obtained.''

Neither of the foregoing statements in the affidavits were denied.

Defendants rely upon the case of *Brill* v. *Fox,* 211 Cal. 739 [297 Pac. 25, 26], where it is said: ''The legal principles underlying the granting of motions to set aside defaults are comparatively simple, and have been frequently announced by this court. The question is primarily one within the discretion of the trial court, but this discretion is not capricious or arbitrary, but it is an impartial discretion guided and controlled in its exercise by fixed legal principles.

'' 'It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' (*Bailey* v. *Taaffe,* 29 Cal. 422, 424, quoted with approval in *Waite* v. *Southern Pac. Co.,* 192 Cal. 467, 470 [221 Pac. 204].) It is also well settled that it is the policy of the law to bring about a trial on the merits wherever possible, so that any doubts which may exist should be resolved in favor of the application, to the end of securing a trial upon the merits. (*Jergins* v. *Schenck,* 162 Cal. 747, 748 [124 Pac. 426] ; *Waite* v. *Southern Pac. Co., supra.*) Although it is true that courts of appeal have shown great reluctance in cases of this kind to disturb the order of the trial court, it is equally true that denials of such relief by the trial court are scanned more carefully than cases where the trial court has granted the relief, to the end that wherever possible cases may be heard on their merits. (See *California Nat. Bank* v. *El Dorado L. & M. Co.,* 200 Cal. 542 [253 Pac. 704] ; *Waite* v. *Southern Pac. Co., supra; Mitchell* v. *California etc. S. S. Co.,* 156 Cal. 576 [105 Pac. 590] ; *Roehl* v. *Texas Co.,* 107 Cal. App. 708

[291 Pac. 262]; *Toon* v. *Pickwick Stages,* 66 Cal. App. 450 [226 Pac. 628].)''

█ When we apply these rules to the facts of the instant case we cannot conclude that the trial court abused its discretion in refusing to set aside the judgment and vacate the default. (See *Wattson* v. *Dillon,* 6 Cal. (2d) 33 [56 Pac. (2d) 220]; *Shearman* v. *Jorgensen,* 106 Cal. 483 [39 Pac. 863]; *Redding etc. Co.* v. *National Surety Co.,* 18 Cal. App. 488 [123 Pac. 544]; *Gill* v. *Peppin,* 41 Cal. App. 487 [182 Pac. 815]; *Essig* v. *Seaman,* 89 Cal. App. 295 [264 Pac. 552].)

No serious consideration need be given to Dike's excuse that he was not familiar with judicial procedure. He was a man of considerable business experience. He received two copies of the summons and complaint. The summons was in the usual form and notified him to appear and answer within ten days. If he were unfamiliar with judicial proceedings he should have at least read the summons and informed himself on the time given him to appear. When he mailed the summons and complaint to his attorneys he did not inform them of the time of service. He left his office before a reply could have been expected from his attorneys owing to an intervening holiday and did not return until after the time to answer had expired. Though he had others in his office he gave no one authority to open his mail or to attend to this most important matter during his absence. When he received a tacit offer from an attorney for plaintiff to vacate the defaults he did not communicate it to his attorneys so that they might act upon it. A study of the record leaves the conclusion that Dike was inexcusably careless with no reasonable excuse being shown for his negligence. His attorneys were in no manner to blame as they acted within a reasonable time after being informed of the carelessness of their client.

Order affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1936.